**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ANTHONY DWAYNE WASHINGTON,**

        **Petitioner,**

**v.**                             **CASE NO. 05-CV-70589-DT**
                                     **HONORABLE DENISE PAGE HOOD**

**LINDA METRISH,**

        **Respondent.**
_____/

**OPINION AND ORDER**
**(1) DENYING AS MOOT PETITIONER'S MOTIONS FOR A STAY,**
**FOR AN EXTENSION OF TIME, AND FOR RECONSIDERATION,**
**(2) GRANTING PETITIONER'S MOTION TO AMEND, AND**
**(3) DENYING THE HABEAS CORPUS PETITION**

Petitioner Anthony Dwayne Washington has filed a *pro se* habeas corpus petition under

28 U.S.C. § 2254.  The habeas petition attacks Petitioner's 1997 state convictions for involuntary

manslaughter and possession of a firearm during the commission of a felony (felony firearm).

Respondent Linda Metrish urges the Court to deny the habeas petition.  The Court has

determined for reasons given below that Petitioner's claims are procedurally defaulted or

meritless.  Accordingly, the habeas petition will be denied.

**I.  Background**

**A.  The State Court Proceedings**

Petitioner was charged in Wayne County, Michigan with first-degree murder, assault

with intent to commit murder, and felony firearm.  The charges arose from the fatal shooting of

John Holland and an assault on Ernest Holland at a house on Maryland Avenue in Detroit.

Petitioner and Alex Bryant lived in the house, and a small group of people had gathered there on

April 10, 1994, to celebrate Charlotte Coleman's birthday.  An argument broke out between John Holland and Alex Bryant.  Witnesses testified that Petitioner subsequently entered the house through a window and shot John Holland in the back.  He assaulted Ernest Holland by pointing a gun at his head.

Petitioner testified that he did not intend to shoot John Holland and that he did not place a gun next to Ernest Holland's head.  His defense was that the shooting was accidental and that he fired a gunshot next to Ernest Holland to scare him because he thought Ernest intended to stab him with a knife.

On December 19, 1997, a circuit court jury acquitted Petitioner of murder and convicted him of the lesser offense of involuntary manslaughter.  Petitioner also was convicted of felony firearm, but he was acquitted of assault with intent to commit murder and the lesser-included offense of assault with a dangerous weapon.  The trial court sentenced Petitioner as a habitual offender, second offense, to two years in prison for the felony firearm conviction, followed by fifteen to twenty-two and a half years in prison for the manslaughter conviction.

On direct appeal from his convictions, Petitioner argued through counsel that:  (1) the trial court abused its discretion and violated his constitutional rights when it ordered an immediate competency examination and hearing; (2) trial counsel was ineffective when he (a) failed to object to the trial court's grant of an immediate competency hearing and (b) failed to call witnesses at the competency hearing; (3) the trial court abused its discretion by denying Petitioner's motion for a continuance to secure an independent examination regarding criminal responsibility; (4) trial counsel failed to timely investigate and pursue Petitioner's insanity defense before trial; and (5) the trial court's negative and hostile responses to jurors who

2

expressed an inability to be fair deprived him of an impartial jury and fair trial.  Petitioner

alleged in a *pro se* supplemental brief that he was denied due process when the police coerced

Charlotte Coleman into making a false statement, which was admitted at Petitioner's trial.  The

Michigan Court of Appeals disagreed with Petitioner's claims and affirmed his convictions in an

unpublished opinion.  *See People v. Washington*, No. 211409  (Mich. Ct. App. May 15, 2001).

Petitioner raised the same six claims in the Michigan Supreme Court, which denied leave to

appeal on December 21, 2001.  *See People v. Washington*, No. 119645 (Mich. Sup. Ct. Dec. 21,

2001).

On May 6, 2002, Petitioner filed a motion for relief from judgment, which the trial court

denied.  He alleged in an appeal from the trial court's order that;  (1) defense counsel failed to

object to a violation of the 180-day rule and to Charlotte Coleman's coerced statement; (2)

appellate counsel failed to raise a claim regarding the 180-day rule and failed to assist Petitioner

with his supplemental brief concerning Charlotte Coleman's coerced statement; (3) he was not

brought to trial within 180 days; (4) his constitutional right to a speedy trial was violated; and (5)

he was denied due process when the police coerced Charlotte Coleman into making a false

statement.  The Michigan Court of Appeals denied leave to appeal because Petitioner had

"fail[ed] to meet the burden of establishing entitlement to relief under [Michigan Court Rule]

6.508(D)."  *People v. Washington*,  No. 250752 (Mich. Ct. App. Mar. 11, 2004).

Petitioner raised the same claims and a few new claims in the Michigan Supreme Court.

On October 25, 2004, the Michigan Supreme Court denied leave to appeal because Petitioner

had "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule]

6.508(D)."  *People v. Washington*, No. 125998 (Mich. Sup. Ct. Oct. 25, 2004).

## B.  The Federal Proceedings

Petitioner filed his habeas corpus petition on February 14, 2005.  The grounds listed in

the habeas petition read:

> I.      Petitioner was denied his right to due process of law when Detroit
>         police obtained [a] coercive confession from Ms. Coleman.
>
> II.     Petitioner was denied his right to due process of law under proof
>         beyond a reasonable doubt standard.
>
> III.    Petitioner was denied his right to due process of law when [the]
>         trial judge gave [an] erroneous jury instruction.
>
> IV.     Petitioner was denied his state and federal constitutional right to
>         the effective assistance of trial counsel.
>
> V.      Petitioner was denied his state and federal constitutional right to
>         the effective assistance of appellate counsel.
>
> VI.     Petitioner was denied his due process right to a fair sentence.

On March 2, 2005, Petitioner supplemented his habeas petition with the following additional

issue:

> VII.    Petitioner was denied his statutory right to the United States'
>         constitutional law when the prosecutor failed to prosecute within
>         [the] 180-day rule requirement.

Petitioner subsequently moved to stay his case so that he could exhaust state remedies for

his sixth claim regarding the sentence.  The Court denied Petitioner's motion after concluding

that the claim was not potentially meritorious and that Petitioner had not shown "good cause" for

failing to raise his unexhausted claim in state court sooner.


Respondent subsequently filed her responsive pleading.  She argued through counsel that

Petitioner's first claim was procedurally defaulted and that his remaining claims were

4

unexhausted and procedurally defaulted.  Petitioner then filed another motion to stay, a motion

for an extension of time to file a brief, a motion for reconsideration of the Court's order denying

his first request for a stay, and a motion to amend and resubmit his habeas petition.

## II.  The Pending Motions

Petitioner's motion for a stay seeks to have the Court hold this case in abeyance while

Petitioner exhausts state remedies for his sentencing claim.  His motion for an extension of time

seeks thirty days in which to file a supporting brief.  The motion for reconsideration seeks

reconsideration of the Court's order denying Petitioner's first motion for a stay.  Petitioner's

motion to amend seeks to amend and resubmit his habeas petition with only the following three

claims:  (1) the police coerced a confession from Ms. Coleman; (2) trial counsel failed to object

to violation of the 180-day rule and to admission of Coleman's coerced statement; and (3)

appellate counsel failed to (a) help Petitioner with his supplemental appellate brief and (b)

present an argument regarding the violation of the 180-day rule.

Petitioner's motion for an extension of time is moot, because he filed a memorandum of

law on October 20, 2005, before the Court had an opportunity to address his motion.  Petitioner's

motion for a stay and for reconsideration of the order denying his first request for a stay also are

moot.  Petitioner no longer seeks a stay or an opportunity to further exhaust state remedies.

Accordingly, the motions for a stay, for an extension of time, and for reconsideration are denied

as moot.


Petitioner's motion to amend his petition to assert only three exhausted claims is

GRANTED.  The Court will proceed to address those three claims, which are set forth in

Petitioner's memorandum of law.

### III.  Discussion

### A.  A Witness's Allegedly Coerced Statement to the Police

The first claim set forth in Petitioner's memorandum of law alleges that the police coerced Charlotte Coleman into making a false statement.  Petitioner alleges that the admission of Coleman's pretrial statement to the police at trial violated his right to due process and a fair trial.

### 1.  Background

This claim arose during the prosecutor's questioning of Charlotte Coleman, who was present when Alex Bryant and John Holland got into an argument at the house on Maryland Avenue.  Coleman testified that Petitioner crawled through a window in the house, fired a gunshot into the floor, asked what the occupants were doing, and ordered everyone out of the house because they were disrespecting it.  The prosecutor asked Coleman whether she had told the police that Petitioner made those comments.  Coleman responded that she had been forced to make a statement, that her statement did not contain everything that she had said, and that the police had altered the statement.

The prosecutor continued her direct examination of Coleman by questioning Coleman about the portion of her statement where she said that John Holland had possessed a gun, but subsequently handed the gun to Ernest Holland.  Coleman replied that this was not correct and that she never saw John pass the gun back to Ernest.  Later, when the prosecutor pointed out that Coleman told the police she did not see Ernest with a gun, Coleman said, "That's been changed."

On cross-examination, Coleman testified that the gun went off after someone named

6

Dusty grabbed Petitioner from behind. Coleman claimed to have told the police about this aspect of the incident, but the comment did not appear in her written statement. She testified that the police had threatened to take her children and to convict her of first-degree murder if she did not tell the truth. She claimed that she signed her statement to get out of the police station and because she was terrified and did not know what to do.

On re-direct examination, Coleman testified that the police left some things out of her statement and fabricated the portion of her statement where she said that she did not know where Petitioner got the gun. She admitted, however, that many of the comments in her statement to the police were true.

## 2. Procedural Default

Respondent maintains that Petitioner's first claim is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997).

> When a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000). Federal courts may consider a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When determining whether a prisoner's constitutional claim is procedurally defaulted and barred from habeas review, courts must ascertain whether: (1) there is a state procedural rule applicable to the petitioner's claim; (2) the petitioner failed to comply

with that rule; (3) the state courts actually enforced the state procedural sanction; (4) the procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (5) the petitioner has shown cause for not complying with the procedural rule and actual prejudice from the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A state procedural rule is an adequate and independent state ground for forclosing review if the rule was well-established and normally enforced at the time it was applied.  *See Lungren v. Mitchell*, __ F.3d __, __, No. 02-3001, slip op. at 6 (6th Cir. Mar. 13, 2006).

### a.  The State Procedural Rule

Michigan's contemporaneous-objection rule requires defendants in criminal cases to make an objection in the trial court in order to preserve an issue for appellate review.  *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999).  "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances."  *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).

Petitioner violated the State's contemporaneous-objection rule by not objecting to the prosecutor's questions regarding Charlotte Coleman's statement to the police.  The Michigan Court of Appeals relied on Petitioner's failure to object, saying:  "Defendant failed to raise this issue for the trial court's consideration; therefore, it has not been preserved for appellate review. However, this Court may consider unpreserved issues where failure to do so would result in manifest injustice."  *Washington*, Mich. Ct. App. No. 211409, at 6 (citations omitted).

Petitioner's failure to comply with the State's contemporaneous-objection rule was an

adequate and independent state ground for forclosing review because the rule was in effect and

enforced before Petitioner's trial.  And although the court of appeals reviewed Petitioner's claim

for manifest injustice, this Court is not precluded from finding that Petitioner procedurally

defaulted his claim.  As the Supreme Court explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative*
> holding.  By its very definition, the adequate and independent state ground
> doctrine requires the federal court to honor a state holding that is a sufficient basis
> for the state court's judgment, even when the state court also relies on federal law.
> *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935).  Thus, by applying this
> doctrine to habeas cases, [*Wainwright v.*] *Sykes* [433 U.S. 72 (1977)] curtails
> reconsideration of the federal issue on federal habeas as long as the state court
> explicitly invokes a state procedural bar as a separate basis for decision.  In this
> way, a state court may reach a federal question without sacrificing its interests in
> finality, federalism, and comity.

*Id.* at 264 n.10 (emphasis in original).  Therefore, in order for this Court to consider the

substantive merits of Petitioner's claim, he must show "cause and prejudice" or a miscarriage of

justice.  *Coleman*, 501 U.S. at 750.

### b.  Cause and Prejudice

Petitioner alleges that his trial attorney should have objected to the prosecutor's

questions.  Constitutionally ineffective assistance of counsel is "cause" for a procedural default.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004).

However, to prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate

that his attorney's performance was deficient and that the deficient performance prejudiced the

defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is

deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at

688.  The defendant must show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

9

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defense counsel was not ineffective for failing to object to the prosecutor's use of Charlotte Coleman's statement to the police because, for the most part, Coleman testified consistently with her prior statement.  Although she denied telling the police that John Holland handed a gun to Ernest Holland, she admitted at trial that she did not see John with a gun.

There was a slight discrepancy between Coleman's statement to the police and her testimony about Petitioner's comments before the shooting.  Coleman testified that Petitioner fired a gunshot into the floor, questioned people about their conduct, and ordered them out of the house because they were disrespecting it.  Her statement to the police was less detailed as to what Petitioner had said.  However, Petitioner himself testified that, before the shooting, he was upset because people were tearing up his house and that he instructed John Holland to get out of the house.  Moreover, Charlotte Coleman testified that any discrepancies between her testimony and her statement to the police did not change the fact that Petitioner came through the window and shot John Holland at a time when John was not holding anything in his hands.

Furthermore, Coleman was not the only eyewitness to testify.  Toni Harris testified that Petitioner pulled out a gun and shot John Holland in the back.  Harris also testified that Petitioner tried to shoot Ernest Holland in the head.  Ernest Holland testified that he did not observe the shooting, but he saw Petitioner with a pistol immediately after the shooting and he

noticed that John Holland was not armed.  Ernest claimed that Petitioner pointed a gun at his

(Ernest's) head.        At the close of the trial, the trial court charged the jury to be very careful

how they considered prior inconsistent statements.  The court stated that, if the jurors concluded

the witness made the statement, they could use the evidence to help them decide whether the

witness's trial testimony was truthful, but not for the purpose of determining whether the

prosecutor proved the elements of the offense.

The Court concludes for all these reasons that defense counsel's performance was not

deficient and that any deficiency did not prejudice the defense.  Therefore, defense counsel was

not ineffective and cannot be deemed "cause" for Petitioner's procedural default.  The Court

need not determine whether Petitioner has established the prejudice prong of the "cause and

prejudice" test, because he has not shown "cause."  *Smith v. Murray*, 477 U.S. 527, 533 (1986);

*Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

### c.  Miscarriage of Justice

Petitioner may overcome his procedural default, even in the absence of "cause and

prejudice," by demonstrating that the alleged constitutional error probably resulted in the

conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S.

386, 388 (2004); *Carrier*, 477 U.S. at 496.  "To establish the requisite probability, the petitioner

must show that it is more likely than not that no reasonable juror would have convicted him in

the light of . . . new evidence."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not submitted any new evidence from which a reasonable juror could

conclude that he is actually innocent and not guilty of the offenses for which he was convicted.

Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate

11

the substantive merits of Petitioner's procedurally defaulted first claim.

## B.  Trial Counsel

Petitioner's second claim alleges that his trial attorney provided ineffective assistance when he failed to object to a violation of the State's 180-day rule and the admission of Charlotte Coleman's statement to the police.  This claim and Petitioner's third claim arguably are procedurally defaulted because they were raised for the first time on state collateral review and because the state courts denied relief under Michigan Court Rule 6.508(D).  Rule 6.508(D)(3) generally bars a state court from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction or sentence. The United States Court of Appeals for the Sixth Circuit has held that state orders based on Rule 6.508(D) are a sufficient explanation for federal district courts to conclude that the orders were based on a procedural bar.  *See Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000).

Procedural default, however, "is not a jurisdictional bar to review on the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied,* __ U.S. __, 126 S. Ct. 1032 (2006), and the Court believes that it is easier to address the merits of Petitioner's second and third claims than to apply the doctrine of procedural default to them.  Therefore, the Court will excuse any procedural default under Michigan Court Rule 6.508(D) and will proceed to address the substantive merits of Petitioner's remaining claims as set forth in his memorandum of law.

## 1.  Failure to Object to an Alleged Violation of the 180-Day Rule

The Court has already determined that defense counsel was not ineffective for failing to object to evidence of Charlotte Coleman's statement to the police.  The remaining question is

12

whether defense counsel was ineffective for failing to object to the alleged violation of the

State's 180-day rule.[1]  The applicable statute reads:

> (1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

> (2) This section does not apply to a warrant, indictment, information, or complaint arising from either of the following:

> (a) A criminal offense committed by an inmate of a state correctional facility while incarcerated in the correctional facility.

> (b) A criminal offense committed by an inmate of a state correctional facility after the inmate has escaped from the correctional facility and before he or she has been returned to the custody of the department of corrections.

Mich. Comp. Laws § 780.131.

## 2.  Application of the Rule

The 180-day rule does not apply to someone who commits a crime while on parole unless

and until parole is revoked.  *People v. Von Everett*, 156 Mich. App. 615, 618-619; 402 N.W.2d

---

[1]  Petitioner has not alleged a violation of his constitutional right to a speedy trial.

13

773, 775 (1986). "[U]ntil revocation of parole, a paroled prisoner who is being detained locally, and against whom a parole hold has been filed, is neither, because of the hold, awaiting incarceration in a state prisoner nor an inmate of a penal institution to whom the 180-day rule applies." *Id.*

Petitioner alleges that he was a parolee when he committed the offenses in this case, and the record before the Court indicates that Petitioner's parole was not revoked before his trial and ensuing conviction. Instead, the Michigan Department of Corrections placed a hold on Petitioner while felony charges were pending against him. The Parole Board revoked Petitioner's parole after he was convicted of manslaughter and felony firearm. Thus, the 180-day rule did not apply to Petitioner, and defense counsel was not ineffective for failing to object to the fact that Petitioner was not brought to trial within 180 days of his arrest.

### C. Appellate Counsel

The third and final habeas claim alleges that appellate counsel was ineffective because she failed to raise certain issues on direct appeal from Petitioner's convictions. Petitioner claims that appellate counsel should have challenged the violation of the 180-day rule and helped him with his supplemental brief in which he objected to the use of Charlotte Coleman's statement to the police.

"[T]he effectiveness of appellate counsel can be measured by the well-established *Strickland* standard and, in this Circuit, with the assistance of the eleven questions set forth in *Mapes* [*v. Coyle*, 171 F.3d 408 (6th Cir. 1999)]." *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005). The eleven questions are:

(1) Were the omitted issues "significant and obvious"?
(2) Was there arguably contrary authority on the omitted issues?

14

(3)  Were the omitted issues clearly stronger than those presented?
(4)  Were the omitted issues objected to at trial?
(5)  Were the trial court's rulings subject to deference on appeal?
(6)  Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
(7)  What was appellate counsel's level of experience and expertise?
(8)  Did the petitioner and appellate counsel meet and go over possible issues?
(9)  Is there evidence that counsel reviewed all the facts?
(10) Were the omitted issues dealt with in other assignments of error?
(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 171 F.3d at 427-28.

An appellate attorney need not raise every nonfrivolous argument on appeal if counsel decides not to present those arguments as a matter of professional judgment. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "[I]t is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 285, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.' *Id*. at 289." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard*, 405 F.3d at 485 (citing *Greer v. Michell*, 264 F.3d 663 (6th Cir. 2001)).

## 1.  Failure to Contest the Prosecutor's Use of Charlotte Coleman's Statement to the Police

Petitioner was represented by an assistant state appellate defender, who corresponded with Petitioner about appellate issues and appears to have considered all the facts. Appellate

15

counsel was justified in not raising the issue of Charlotte Coleman's statement to the police, because the issue was not a significant one, nor preserved for appellate review by an objection in the trial court.  Even if appellate counsel was remiss in failing to raise the issue, Petitioner himself raised the argument in a supplemental brief, which the court of appeals addressed and ultimately rejected.  Thus, appellate counsel's allegedly deficient performance did not prejudice Petitioner's appeal.

### 2.  Failure to Assert a Violation of the 180-day Rule

Appellate counsel's failure to raise a claim about the 180-day rule did not constitute deficient performance, because the rule did not apply to Petitioner, who was a parolee. Moreover, Petitioner was responsible for most of the delay in going to trial.  As appellate counsel explained to Petitioner in a letter rejecting his request to raise a speedy trial claim,

> the delays in 1995 were due to multiple motions filed by the defense (to quash, for bond, to assign counsel, for counsel to withdraw, and for the appointment of an examiner).  The delay from February 16, 1996 until October 31, 1997 was due to the fact that you were found to be incompe[]tent.  During this period, you also switched attorneys.  On December 12, 1997, defense counsel requested an adjournment, on the grounds that you were incompetent to stand trial.  Judge Jones held a competency hearing on December 15, 1997 and found you to be competent.  Your trial started on December 16, 1997.  Based on these circumstances, there is no basis for a speedy trial issue.

(Assistant State Appellate Defender Susan M. Meinberg's letter dated October 26, 2000).

In conclusion, Petitioner's underlying claims lack merit, and there is not a reasonable probability that inclusion of the omitted issues would have changed the result of the appeal. Therefore, appellate counsel was not ineffective for failing to raise the omitted issues.

### IV.  Conclusion

16

Petitioner's first claim is procedurally defaulted, and the state courts' rejection of Petitioner's second and third claims regarding trial and appellate counsel did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*. Accordingly, the application for a writ of habeas corpus is DENIED.

As previously explained, Petitioner's motions for a stay [Doc. #35, Sept. 12, 2005], for an extension of time [Doc. #36, Sept. 19, 2005], and for reconsideration [Doc. #37, Sept. 19, 2005] are denied as MOOT. Petitioner's motion to amend and resubmit his petition with only three exhausted claims [Doc. #38, Sept. 23, 2005] is GRANTED.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Date: July 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 28, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

17